## State Farm Fire and Casualty Co. v. Craley

278

C.P. of Berks County, no. 97-9019, 97-8741.

*Teresa Ficken Sachs,* for plaintiff.
*Dawn A. Segal,* for plaintiff Prudential Property and Casualty Ins. Co.
*Daniel E.P. Bausher,* for defendants.

STALLONE, *J.,* December 22, 1998—These two declaratory judgment actions arise out of a dispute over

whether the plaintiffs, State Farm Fire and Casualty Company and Prudential Property and Casualty Insurance Company, are obligated to provide uninsured motorist benefits coverage to the defendants, Randall P. Craley, in his capacity as administrator of the estate of Jayneann M. Craley and as parent and natural guardian of Keith P. Craley, Gloria M. Craley and Lawrence W. Craley, under separate automobile insurance policies issued by the plaintiffs to the defendants.

Having agreed that there are no factual issues which are in dispute, the parties have stipulated to the following findings of fact without the need for taking any testimony. Therefore, this court need only determine the applicable law pursuant to Pa.R.C.P. 1038.1.

## FINDINGS OF FACT

(1) On July 12, 1993, the decedent, Jayneann Craley, was killed when the 1988 GMC Jimmy S15 Sport Wagon which she was driving, and in which her mother-in-law, Mrs. Gloria M. Craley, and her minor son, Keith P. Craley, were passengers, collided with another vehicle being driven by Terry J. McFadden, who was uninsured.

(2) Mrs. Craley and Keith also sustained multiple injuries as a result of the collision.

(3) At the time of this incident, Jayneann and her husband, Randall P. Craley, Keith, and Mrs. Craley, and Mr. Lawrence W. Craley, her father-in-law, all lived together in the same household at 106 Dogwood Drive, Narvon, Pennsylvania.

(4) The Sport Wagon was registered in Jayneann's name and was insured under a policy issued by State Farm, no. S56-1104-CI7-38A.

(5) Jayneann was the regular operator of the Sport Wagon.

(6) At the time of this incident, Randall owned a 1986 Mazda pickup truck which was not involved in the collision and was insured under a separate insurance policy issued by State Farm, no. S56-1103-C17-38.

(7) At the time of this incident, Mr. and Mrs. Craley owned a 1990 Dodge Caravan which was likewise not involved in the collision and was insured under a policy issued by Prudential, no. 282A-670586.

(8) Jayneann's Sport Wagon was not listed as an insured vehicle on either Randall's State Farm policy or on Mr. and Mrs. Craley's Prudential policy.

(9) Neither Jayneann nor Keith were identified as "named insureds" or "listed operators" of the 1990 Dodge Caravan under Mr. and Mrs. Craley's Prudential policy.

(10) Mrs. Craley was neither a "named insured" nor a "listed operator" of the Sport Wagon which was insured under Jayneann's State Farm policy.

(11) Each of the two State Farm policies provides for uninsured motorist benefits coverage in the maximum amount of $15,000 per person and $30,000 per accident.

(12) Each of the two State Farm policies contains the following "waiver" signed by Jayneann and Randall entitled "Rejection of stacked uninsured motorist benefits," indicating that each of them had waived the right to "stack" uninsured motorist benefits coverage otherwise available under each State Farm policy onto the other's State Farm policy:

"By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy.

Instead the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premium will be reduced if I reject this coverage."

(13) Both Jayneann and Randall received a reduction in the premiums which each of them paid to State Farm for each policy in exchange for their waivers of their right to stack uninsured motorist benefits coverage.

(14) Each State Farm policy also contains the following "household exclusion" clause:

"There Is No Coverage For *Bodily Injury* To An *Insured* Under Coverage U-3:

"(1) While *Occupying* A Motor Vehicle Owned By *You, Your Spouse* Or Any *Relative* If It Is Not Insured For This Coverage Under This Policy; . . . ."

(15) The term "relative," as set forth in this "household exclusion" clause, is defined in each State Farm policy as a "person related to you or your spouse by blood, marriage or adoption who lives with you."

(16) The Prudential policy provided for uninsured motorist benefits coverage in the maximum amount of $100,000 per person and $300,000 per accident.

(17) Part 4 of the Prudential policy defines the scope of the available uninsured motorist benefits coverage as follows:

"If you have this coverage (see the declarations), we will pay up to our limit of liability for bodily injury that is covered under this part when an insured (whether or not occupying a car) is struck by an uninsured vehicle . . . ."

(18) The term "insured" is defined in the Prudential policy, for purposes of uninsured motorist benefits coverage, as follows:

"The named insured and a resident relative using the insured car or a substitute car;

"The named insured and a resident relative while using a non-owned car; or

"The named insured and resident relative if hit by an insured motor vehicle while a pedestrian."

(19) Part 4 of the Prudential policy contains the following "family car exclusion" clause:

"We will not pay for bodily injury to you or a household resident using a non-owned car not insured under this part, regularly used by you or a household resident."

(20) A "non-owned car," as that term is used in this "family car exclusion" clause, is defined in the Prudential policy as:

"A car which is not owned by, registered in the name of or furnished or available for the regular or frequent use of you or a household resident."

(21) The term "household resident," as that term is used in this "family car exclusion" clause, is defined in the Prudential policy as:

"Someone who lives in your household. A household resident includes a resident relative."

(22) A "resident relative," as that term is used in this "family car exclusion" clause, is defined in the Prudential policy as:

"Someone who lives in your household and is related to you [the insured] by blood, marriage, adoption or is a ward or foster child."

(23) Following the July 12, 1993, collision, the estate of Jayneann M. Craley, Keith and Mrs. Craley filed claims for uninsured motorist benefits under Jayneann's State Farm policy, no. S56-1104-C17-38A, under Randall's State Farm policy, no. S56-1103-C17-38, and un-

der Mr. and Mrs. Craley's Prudential policy, no. 282A-670586.

(24) Both Keith and Mrs. Craley's claims were based on their status as "resident relatives" living in the same household.[1]

(25) While State Farm paid the policy limits of $30,000 in uninsured motorist benefits available under Jayneann's State Farm policy, no. S56-1104-C17-38A, it denied coverage under Randall's State Farm policy, no. S56-1103-C17-38, to Jayneann's estate, Keith and Mrs. Craley, on the basis of Randall's waiver of his right to stack uninsured motorist benefits coverage and the "household exclusion" clause set forth herein at finding of fact no. 14.

(26) Prudential denied the claim for uninsured motorist benefits made by Jayneann's estate, Keith and Mrs. Craley under the Prudential policy, no. 282A-670586, on the basis of the "family car exclusion" clause set forth herein at finding of fact no. 21.

(27) The value of the wrongful death/survival claim by Jayneann's estate exceeds all possible combined uninsured motorist benefits coverage limits under both the State Farm and the Prudential policies.

(28) The value of Mrs. Craley's claim for her personal injuries exceeds all possible combined uninsured motorist benefits coverage limits under both the State Farm and the Prudential policies.

(29) The value of Keith's claim for his personal injuries is $40,000.

---

1. While the term "resident relative" is defined in the Prudential policy, it is not defined in the State Farm policies.

### DISCUSSION

The three questions of law before this court for decision are: (1) whether we should enforce the "stacking waiver" executed by Randall under his State Farm policy, (2) whether we should enforce the "household exclusion" clause contained in Randall's State Farm policy and (3) whether we should enforce the "family car exclusion" clause contained in Mr. and Mrs. Craley's Prudential policy. We shall address each of these issues seriatim.

Jayneann's estate, Keith and Mrs. Craley are attempting to "stack" the uninsured motorist benefits coverage under Randall's State Farm policy onto the benefits already paid by State Farm under Jayneann's State Farm policy. Therefore, at the outset, it should be noted that this is commonly referred to as *"inter²*-policy stacking" because it involves single vehicles insured under separate policies. It is to be distinguished from *"intra*-policy stacking" where there are multiple vehicles insured under a single policy and an insured attempts to collect benefits available for *all* of the vehicles insured under that same single policy. State Farm argues that the "stacking waiver" provisions at bar preclude the claimants from obtaining this *"inter*-policy" stacking. Conversely, the claimants argue that these waivers preclude only *"intra*-policy stacking."

In looking to the case law submitted by the parties, we find that none of it is factually on point because it does not address the situation where, as here, there were single vehicles which were each insured under a separate insurance policy. As a result, we are left to make our own interpretation of section 1738 of the

---

2. The writer will be adding italic type throughout this decision for emphasis purposes only.

Pennsylvania Motor Vehicle Financial Responsibility Law, title 75, 75 Pa.C.S. §1738 (Supp. 1998) which provides as follows:

"(a) Limit for each vehicle.—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

"(b) Waiver.—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

"(c) More than one vehicle.—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage."

In interpreting section 1738, we must utilize the time-honored principles of statutory construction set forth in the Statutory Construction Act. The most important principle, therefore, is that, in reviewing a statute such as the one before us, the court must ascertain and effectuate the intention of the General Assembly in order to give effect to all of its provisions. We are also directed to presume that the General Assembly did not intend an absurd or unreasonable result. Title 1, 1 Pa.C.S.

§1922(1) (Supp. 1998); Title 1, 1 Pa.C.S. §1921(a) (Supp. 1998); *Meier v. Maleski,* 670 A.2d 755 (Pa. Commw. 1996).

In applying these principles, the only reasonable interpretation of the language of section 1738 is that "stacking waivers" are enforceable only in the case of *"intra-policy* stacking," where the named insured has multiple vehicles insured under either one policy or under separate policies. Therefore, section 1738 has absolutely no application to *"inter-policy* stacking," such as where two different persons insure two different vehicles under two separate policies and neither is a named insured under the other's policy. This rationale appears to be consistent with the United States District Court's reasoning in *State Farm Mutual Automobile Insurance Company v. Powell,* 879 F. Supp. 538 (W.D. Pa. 1995), where the district court concluded under similar circumstances that "stacking waivers" could be enforced only in an *"intra-policy* stacking" situation where multiple vehicles are insured under either a single policy or under separate policies. As a result, we conclude that the "stacking waiver" executed by Randall is not enforceable to preclude a recovery of uninsured motorist benefits by Jayneann's estate, Keith and Mrs. Craley under Randall's State Farm policy.

We must next determine whether the "household exclusion" clause in Randall's State Farm policy[3] and the "family car exclusion" clause in Mr. and Mrs. Craley's Prudential policy are enforceable so as to preclude the recovery of uninsured motorist benefits under

---

3. Although the "household exclusion" clause also appears in Jayneann's State Farm policy, there is no need for this court to make any further reference to it, since the uninsured motorist benefits available under Jayneann's State Farm policy have already been paid.

either policy. Jayneann's estate, Keith and Mrs. Craley contend that these exclusions violate the public policy of this Commonwealth and are, therefore, invalid, while State Farm and Prudential argue that each of those exclusions has previously been upheld by our appellate courts as not being against public policy. Our review of the case law leads us to conclude that *Eichelman v. Nationwide Insurance Co.*, 551 Pa. 558, 711 A. 2d 1006 (1998), and *Paylor v. Hartford Insurance Co.*, 536 Pa. 583, 640 A.2d 1234 (1994), two cases decided by the Supreme Court of Pennsylvania, are controlling on this issue.

*Eichelman* involved the validity of a "household exclusion" clause that was worded almost identically to the one found in the State Farm policies at bar. There, Eichelman was operating his own motorcycle at the time he was involved in a collision with an underinsured truck driver. He had previously waived underinsured motorist benefits coverage under the policy insuring his motorcycle but attempted to recover underinsured motorist benefits under policies issued to his mother and to her husband, with whom he resided. Each of those policies contained a "household exclusion" clause providing that the underinsured motorist benefits coverage under the policy did not apply to:

"(6) Bodily injury suffered while occupying a motor vehicle owned by you or a relative not insured for underinsured motorist coverage under this policy; . . . ."

After Nationwide Insurance Co. denied his claim for benefits, Eichelman filed a declaratory judgment action requesting a determination that he was entitled to the benefits inasmuch as the "household exclusion" clause violated public policy. The trial court granted summary judgment in Eichelman's favor. On appeal, the Superior

Court of Pennsylvania reversed the trial court's decision, thereby enforcing the "household exclusion" clause as not being against public policy. Thereafter, in a detailed opinion, the Supreme Court of Pennsylvania affirmed the Superior Court's decision. The court began its analysis by noting that a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. It went on to quote its prior opinion in *Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A.2d 407, 409 (1941), in explaining when a contract provision may be declared void for public policy reasons:

"It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring" that the contract is against public policy. *Id.*

The Supreme Court referred to the legislative intent behind the Pennsylvania Motor Vehicle Financial Responsibility Law, this time quoting from *Rump v. Aetna Casualty & Surety Co.,* 551 Pa. 339, 710 A.2d 1093, 1096 (1998):

"[T]he repeal of the No-Fault Motor Vehicle Insurance Act, 40 P.S. §1009.101, and the simultaneous enactment of the MVFRL, reflected a legislative 'concern for the spiralling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways.' "

The Supreme Court concluded by saying that there was no overriding public policy which would forbid the enforcement of a "household exclusion" clause like the one at issue in *Eichelman.*

However, what is also clear from the court's opinion at page 1010, and what is particularly applicable to

the case at bar, is that the court reached that conclusion because Eichelman had *voluntarily* waived underinsured motorist benefits coverage on his motorcycle:

"Here, appellant voluntarily chose not to purchase underinsured motorist coverage. In return for this choice, appellant received reduced insurance premiums. . . . Thus, this court concludes that giving effect to the 'household exclusion' in this case furthers the legislative policy behind underinsured motorist coverage in the MVFRL since it will have the effect of holding appellant to his voluntary choice."

And in *Paylor v. Hartford Insurance Company,* 536 Pa. 583, 640 A.2d 1234 (1994), the Supreme Court addressed the issue of the validity of a "family car exclusion" clause in the context of a claim for underinsured motorist benefits. In that case, Betty Dymond was a passenger in a motor home being operated by her husband, Fred Dymond, which was involved in a single vehicle collision in which both Mr. and Mrs. Dymond were killed. At the time of the collision, the motor home was insured under an insurance policy issued by Foremost Insurance Company. The Dymonds also maintained insurance coverage on three other vehicles that they owned. The other vehicles were insured under a separate insurance policy issued by Hartford Insurance Company. Janet Paylor, the administratrix of the Dymonds' estate, received the limits of the liability coverage under the policy issued by Foremost for the motor home. She then sought to recover underinsured motorist benefits under the Hartford policy, but Hartford denied coverage on the basis of a "family car exclusion" clause contained in the policy which excluded underinsured motorist benefits coverage for "any vehicle owned by or furnished or available for the regular use of the named insured or any family member."

Paylor subsequently initiated a declaratory judgment action against Hartford asserting that the "family car exclusion" clause violated the Pennsylvania Motor Vehicle Financial Responsibility Law and the public policy of the Commonwealth. Following a non-jury trial, the trial court entered judgment in favor of Hartford. On appeal, a panel of the Superior Court reversed.

In reversing the Superior Court's decision and reinstating the trial court's original verdict, the Supreme Court reasoned as follows at pages 598, 640 A.2d at 1240-41 of its opinion:

"The litany of cases demonstrates that the 'family car exclusion' is not necessarily violative of public policy or the legislative intent underlying the MVFRL [the Motor Vehicle Financial Responsibility Law]. The enforceability of the exclusion is dependent upon the factual circumstances presented in each case. *Allowing the 'family car exclusion' to bar coverage in cases where a plaintiff is attempting to convert underinsured coverage into liability coverage is a limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL. Sherwood v. Bankers Standard Insurance Co.,* 424 Pa. Super. 13, 17, 621 A.2d 1015, 1017 (1993) (citations omitted). . . .

" . . . all three of the policies under which Mrs. Dymond's estate sought to recover benefits were in the name of the same insureds—Betty Dymond and Fred Dymond. We conclude that the facts of this case fall within the limited exception recognized in *Marroquin* which permits the family car exclusion to be enforced in cases where the plaintiff is attempting to convert underinsured motorist coverage into liability coverage. The application of this limited exception in this case serves to promote the legislative intent of

the MVFRL and the expression of public policy articulated in the case law of Pennsylvania."

It is clear, therefore, from both *Eichelman* and *Paylor,* that while the Supreme Court considers exclusionary clauses, as a general rule, to be against public policy and, therefore, not enforceable, it has carved out a limited "exception" for those exclusionary clauses which deter an insured from attempting to recover benefits which the insured voluntarily chooses not to pay for. That, of course, is not the situation in the case at bar. Both Jayneann and Randall paid for uninsured motorist benefits coverage under separate State Farm policies. Randall's parents, Mr. and Mrs. Craley, likewise paid for uninsured motorist benefits coverage from Prudential. No attempt was being made by any of them to "convert" any other type of coverage to uninsured motorist benefits coverage. As a result, the denial of uninsured motorist benefits coverage would not serve to promote the legislative intent behind the Pennsylvania Motor Vehicle Financial Responsibility Law of controlling the high cost of insurance. We conclude, therefore, that the "household exclusion" clause contained in Randall's State Farm policy and the "family car exclusion" clause contained in the Prudential policy are not enforceable.

## CONCLUSIONS OF LAW

(1) The "stacking waiver" executed by Randall P. Craley under his State Farm policy, no. S56-1103-C17-38, is not enforceable so as to prevent the estate of Jayneann M. Craley, Keith P. Craley and Gloria M. Craley from recovering uninsured motorist benefits under Randall's State Farm policy, no. S56-1103-C17-38, because the "stacking waiver" does not apply to "*inter*-policy" stacking of benefits.

(2) The "household exclusion" clause contained in Randall's State Farm policy, no. S56-1103-C17-38, is not enforceable so as to prevent the estate of Jayneann M. Craley, Keith P. Craley and Gloria M. Craley from recovering uninsured motorist benefits under his State Farm policy because the "household exclusion" clause is against public policy.

(3) The "family car exclusion" clause contained in Mr. and Mrs. Craley's Prudential policy, no. 282A-670586, is not enforceable so as to prevent the estate of Jayneann M. Craley, Keith P. Craley and Gloria M. Craley from recovering uninsured motorist benefits under their Prudential policy because the "family car exclusion" clause is against public policy.

(4) The estate of Jayneann Craley, Gloria M. Craley and Keith P. Craley are each entitled to recover uninsured motorist benefits under Randall's State Farm policy, no. S56-1103-C17-38.

(5) The estate of Jayneann Craley, Gloria M. Craley and Keith P. Craley are each entitled to recover uninsured motorist benefits under the Prudential policy, no. 282A-670586.

## VERDICT

And now, December 22, 1998, based upon the uninsured motorist benefits coverage provided in Randall's State Farm policy, no. S56-1103-C17-38, of $15,000 per person/$30,000 per accident and under the Prudential policy, no. 282A-670586, of $100,000 per person/$300,000 per accident, it is hereby ordered that Randall P. Craley, in his capacity as administrator of the estate of Jayneann Craley and as parent and natural guardian of Keith P. Craley, and Gloria M. Craley are

entitled to recover the following uninsured motorist benefits, totalling $330,000:

A. *From State Farm Fire and Casualty Company:*

| | |
|---|---|
| (1) Randall P. Craley, administrator of the estate of Jayneann Craley | $30,000 |
| (2) Randall P. Craley, as parent and natural guardian of Keith P. Craley, a minor | 30,000 |
| (3) Gloria M. Craley | 30,000 |
| Total | $90,000 |

B. *From Prudential Property and Casualty Insurance Company:*

| | |
|---|---|
| (1) Randall P. Craley, administrator of the estate of Jayneann Craley | $100,000 |
| (2) Randall P. Craley, as parent and natural guardian of Keith P. Craley, a minor | 40,000 |
| (3)Gloria M. Craley | 100,000 |
| Total | $240,000 |