895 A.2d 530

**Randall P. CRALEY, Administrator of the Estate of Jayneann M. Craley, Randall P. Craley, Parent and Natural Guardian of Keith P. Craley, a Minor, and Randall P. Craley, In His Own Right, and Gloria M. Craley and Lawrence W. Craley, Husband and Wife, Appellants**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued May 16, 2005.

Decided April 21, 2006.

Lee S. Cohen, Robert G. Kelly, King of Prussia, for Pennsylvania Defense Institute and the Ins. Federation of PA, amici curiae.

Daniel E.P. Bausher, Samuel Woodcock, Reading, for Craley et al., appellants.

Scott B. Cooper, James Richard Ronca, Harrisburg, for PA Trial Lawyers Ass'n, appellee amicus curiae.

Teresa Ficken Sachs, Philadelphia, for State Farm Fire and Cas. Co., appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice BAER.

We granted allowance of appeal in this matter to address the interplay between coverage exclusions in motor vehicle insurance policies, including the household vehicle exclusion previously found enforceable by this Court,[1] and the statutory provision of the Motor Vehicle Financial Responsibility Law (MVFRL) providing "named insureds"[2] the ability to waive

---

**1.** The household vehicle exclusion is one of several types of exclusionary clauses included in motor vehicle insurance policies providing uninsured motorist coverage. Specifically, the household vehicle exclusion exempts from uninsured motorist coverage any coverage for bodily injury sustained while occupying a vehicle owned by the named insured, *see infra* note 2, the named insured's spouse, or a resident relative of the named insured, but not insured under the policy in question. *See Prudential Prop. & Cas. Ins. Co. v. Colbert,* 572 Pa. 82, 813 A.2d 747, 751–52 (2002); *Eichelman v. N'wide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006, 1007 (1998).

**2.** Section 1702 (Definitions) of the MVFRL separates "named insureds" from other types of insureds:

"Insured." Any of the following:
(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.
(2) If residing in the household of the named insured:
  (i) a spouse or other relative of the named insured; or
  (ii) a minor in the custody of either the named insured or relative of the named insured.

"stacked" uninsured motorist coverage, 75 Pa.C.S. § 1738, which the Superior Court has found inapplicable to inter-policy stacking, the stacking of benefits provided by two or more policies.[3] After review of the relevant statutory provi-

75 Pa.C.S. § 1702; *see* 75 Pa.C.S. § 1705(f). Under the section at issue in this case, as well as other sections of the MVFRL, a named insured's choices are binding on others insured under the policy. *See, e.g.,* 75 Pa.C.S. § 1705(b) (election of tort options), 1731(b) (waiver of uninsured motorist coverage), 1738(b) (waiver of stacking).

3. § 1738. Stacking of uninsured and underinsured benefits and option to waive

(a) Limit for each vehicle.—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) Waiver.—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) More than one vehicle.—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

(d) Forms.—

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

UNINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

. . . . . . . . . . . . . . . . . . . . . . . .
Signature of First Named Insured

. . . . . . . . . . . . . . . . . . . . . . . .
Date

(2) [Providing identical language in relation to underinsurance benefits as that provided above for uninsurance benefits.]

·

sions, the insurance policies at issue, and our precedent, we hold the named insured's waiver of inter-policy stacking enforceable under the facts of this case, without addressing the enforceability of the household vehicle exclusion, upon which the Superior Court relied. Nevertheless, we affirm the Superior Court's holding reversing the trial court's grant of relief to the insureds and remanding for entry of declaratory judgment in favor of the insurance company. *See Donnelly v. Bauer,* 553 Pa. 596, 720 A.2d 447, 454 (1998) (holding that this Court may affirm on any basis).

The facts of this case, although tragic, are straightforward and uncontested. While driving her own car insured by Appellee State Farm Insurance Company (State Farm), Jayneann M. Craley was killed in an accident attributed to the negligence of an uninsured drunk driver on July 12, 1993. Her infant son, Keith Craley, and her mother-in-law, Gloria Craley, who resided with Keith and Jayneann, were passengers in the car and were injured in the accident. Following the accident, Jayneann's husband, Randall Craley, as administrator of Jayneann's estate and on Keith's behalf, and Gloria Craley on her own behalf sought and collected uninsured motorist benefits from State Farm pursuant to a policy for which Jayneann was the named insured and which provided coverage of $15,000 per person and $30,000 per occurrence.[4]

The Craleys' claims, however, exceeded the limits of the benefits provided under Jayneann's policy. Accordingly, the Craleys sought uninsured motorist benefits under Randall Craley's motor vehicle insurance policy.[5] Randall's policy had

(e) Signature and date.—The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.
75 Pa.C.S. § 1738.

**4.** We will refer throughout this opinion to the claimants collectively as the "Craleys."

**5.** According to the Craleys, Randall's claim on behalf of Keith is no longer at issue. Additionally, Gloria sought coverage under her own insurance policy issued by Prudential Property and Casualty Insurance Company. That claim is not at issue before this Court. Therefore, this

the same limits as Jayneann's and also was underwritten by State Farm. It is Randall's policy and its exclusions that are relevant to the legal issues presented in this case. State Farm does not contest that Jayneann, Keith, and Gloria all fit within the definition of "insureds" under the language of Randall's policy because they were all resident relatives of Randall, the named insured. *See* 75 Pa.C.S. § 1702 ("Insureds").

State Farm filed a declaratory judgment action in the Berks County Court of Common Pleas, seeking a determination that it had no obligation to pay the Craleys' claims under Randall's policy. The company believed that the claims were excluded pursuant to Randall's waiver of stacking and the household vehicle exclusion included in the policy endorsement related to non-stacked uninsured motorist coverage.[6]

State Farm maintained that the stacking waiver form Randall signed was valid and applied to "inter-policy stacking," the stacking of limits available on two or more separate policies, such as Jayneann's and Randall's policies. "Inter-policy stacking" is in contrast to "intra-policy stacking," which would entail the stacking of limits applicable to more than one vehicle insured under a single policy. The waiver signed by Randall, entitled "Rejection of stacked uninsured motorist benefits," conforms to Section 1738(d) of the MVFRL, and thus provides:

> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the

appeal concerns the estate's and Gloria's claim under Randall's policy with State Farm.

6. Jayneann's policy also contained the same household exclusion and stacking waiver.

stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.[7]

The parties stipulated that Randall received a reduced premium as a result of signing the stacking waiver.

Due to Randall's signing of the stacking waiver, Randall's policy included Endorsement 6997AG Uninsured Motor Vehicle—Coverage U3 and Underinsured Motor Vehicle—Coverage W3 (Non–Stacking Options). The household vehicle exclusion set forth at Endorsement 6997AG provides as follows:

There is no coverage for bodily injury to an insured under Coverage U3: [8]

(1) While occupying a motor vehicle owned by you, your spouse, or any relative if it is not insured for this coverage under this policy. . . .

In addition to asserting the enforceability of the waiver of stacking, State Farm maintained that it was not obligated to pay the Craleys' claims pursuant to the household vehicle exclusion because the insureds were injured while occupying Jayneann's vehicle, which was not insured under Randall's policy. Randall's policy listed only his pick-up truck, which was not involved in the accident.

The trial court viewed this case as presenting an issue of first impression because prior caselaw relating to stacking waivers had not addressed a situation involving individual vehicles insured under separate policies, implicating inter-policy stacking. Invoking the rules of statutory construction, the court concluded that waiver provisions in Section 1738 did not apply to inter-policy stacking, and Randall's waiver of stacking, therefore, did not obviate State Farm's duty to pay the Craleys' claims.

The trial court next turned to the applicability of the household vehicle exclusion in Randall's policy. The court concluded that the case was controlled by this Court's deci-

7. We note that Section 1738(d) also directs insurers to supply an identical form relating to the waiver of stacking of underinsured motorist coverage.

8. Uninsured Motorist Coverage.

sions in *Eichelman v. Nationwide Insurance Co.*, 551 Pa. 558, 711 A.2d 1006 (1998), and *Paylor v. Hartford Insurance Co.*, 536 Pa. 583, 640 A.2d 1234 (1994), characterizing those decisions as setting forth a general rule that exclusionary clauses are against public policy, but excepting and finding enforceable clauses that "deter an insured from attempting to recover benefits which the insured voluntarily chooses not to pay for." *State Farm Fire & Cas. Co. v. Craley*, 39 Pa. D. & C. 4th 277, 291 (1998) (*Craley I*).

Notwithstanding its acknowledgment that in *Eichelman* we held that a household vehicle exclusion similar to the one in Randall's policy did not violate public policy, the trial court limited the holding in *Eichelman*, suggesting that it applied only to insureds who voluntarily waived uninsured motorist coverage under the policy covering the vehicle involved in the accident and then attempted to claim uninsured motorist coverage under a separate policy. Similarly, the court noted that in *Paylor* we held that a "family car exclusion" [9] could be enforced where a claimant attempted to convert inexpensive underinsured motorist coverage on one policy covering automobiles into more expensive liability coverage for a motor home involved in an accident and insured under a separate policy without underinsured motorist coverage.

The court found that the Craleys' situation did not fit the *Paylor* or *Eichelman* exceptions because the Craleys were not trying to convert their coverage into something for which they had not paid, but rather were trying to collect uninsured motorist benefits for which the court concluded they had paid under both Jayneann's and Randall's insurance policies.[10]

**9.** A "family car exclusion" is another category of exclusionary clause under which an insured cannot obtain uninsured or underinsured motorist benefits by claiming that a car owned by an insured is itself uninsured or underinsured. *See Paylor*, 640 A.2d at 1234.

**10.** Presumably because the trial court previously found the inter-policy stacking waiver invalid, the trial court did not acknowledge that both Randall and Jayneann had received a reduced premium for their agreement to waive the ability to stack the coverage limits of the two polices, which, given the identical coverage limits of the polices in this case, would prevent recovery of additional benefits under Randall's policy.

Noting that the primary purpose of the MVFRL was to control the rising costs of insurance caused by the large numbers of uninsured, the court found that the denial of coverage in this case would not serve that purpose because the Craleys had paid the premiums for the coverage they sought. The court therefore found the household vehicle exclusion void as against public policy under the circumstances of this case and awarded the Craleys benefits under Randall's State Farm policy on December 22, 1998.

In making the award, the trial court erroneously believed that the available coverage limit of Randall's policy was $90,000. Accordingly, in April 2000, following the filing of post-trial motions by the Craleys and State Farm, the trial court amended the verdict to award the Craleys $30,000, pursuant to the parties' stipulation that the policy provided for a maximum benefit of $30,000 per accident, but denied State Farm's post-trial motion asserting, *inter alia,* trial court error in refusing to enforce the stacking waiver and the household vehicle exclusion. The verdict was reduced to judgment in May 2000, after which State Farm appealed to the Superior Court.

An *en banc* panel of the Superior Court initially dismissed State Farm's appeal as untimely, based on the majority's conclusion that the appeal had not been filed within the requisite thirty days following the December 1998 decision, pursuant to Pa.R.A.P. 903, even though State Farm filed its appeal within thirty days of the April 2000 order deciding post-trial motions. *State Farm Fire & Cas. Co. v. Craley,* 784 A.2d 781 (Pa.Super.2001) (*"Craley II"*). This Court granted State Farm's petition for appeal, which the Craleys did not oppose, and consolidated it with three other decisions of the Superior Court quashing appeals as untimely based on the appellants' decisions to file post-trial motions rather than appeal the trial court's declaratory judgment order within thirty days. In *Motorists Mutual Insurance Co. v. Pinkerton,* 574 Pa. 333, 830 A.2d 958 (2003), we reversed the Superior Court's quashals and remanded for review on the merits.

On remand of the Craley litigation, a three-judge panel of the Superior Court addressed the merits of State Farm's appeal. Initially, the court asserted that the "cases addressing the interplay of the household vehicle exclusion and inter- and intra-policy stacking and what can and cannot be waived are far from models of logic and clarity." *State Farm Fire & Cas. Co. v. Craley*, 844 A.2d 573, 574 (Pa.Super.2004) *("Craley III").* In addressing the household exclusion, the majority established what amounts to a *per se* rule, rejecting the Craleys' argument that the household vehicle exclusion violates public policy and concluding that "if there is a household vehicle exclusion clause, as in the instant case, there is no coverage for any car owned by a resident relative other than the one involved in the accident." *Id.* The court relied upon its own prior decision in *Nationwide Mutual Insurance Co. v. Harris*, 826 A.2d 880, 885 (Pa.Super.2003), in which it concluded that "our supreme court's recent case law [in *Burstein [v. Prudential Property & Cas. Ins. Co.*, 570 Pa. 177, 809 A.2d 204] and *Prudential Property and Casualty Insurance Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002),] leaves little doubt as to the validity of household vehicle exclusions." Holding the instant household vehicle exclusion enforceable, the court reversed the trial court's order and remanded for entry of declaratory judgment in favor of State Farm.

Additionally, the court addressed the issue of the waiver of inter-policy stacking, despite basing its decision on the validity of the household vehicle exclusion. Although the court did not consider whether the validity of the household vehicle exclusion could be affected by the validity or invalidity of the Randall's waiver of stacking, the panel in *Craley III* did call into question the Superior Court's decisions in *State Farm Mutual Auto. Insurance Co. v. Rizzo*, 835 A.2d 359 (Pa.Super.2003), and *In re Ins. Stacking Litigation*, 754 A.2d 702 (Pa.Super.2000), which held inter-policy stacking waivers invalid under Section 1738. Indeed, it contemplated a construction of Section 1738 that would encompass waiver of inter-policy stacking before deferring to what it considered the binding *Rizzo* decision, pending action by an *en banc* panel of

the Superior Court, this Court, or the General Assembly. Nonetheless, the majority echoed the Superior Court's opinion in *Harris*, noting that it found itself "hard-pressed to understand how there can be a statutory right to allow stacking which cannot be waived in inter-policy situations but allow it to be taken away by a household vehicle exclusion." *Craley III*, 844 A.2d at 575 (quoting *Harris*, 826 A.2d at 884).[11]

We share the Superior Court's discomfort with this anomalous proposition and find it to be the product of the Superior Court's flawed analysis of Section 1738 in *Stacking Litigation*. As discussed below, we reject the premise that Section 1738 does not permit inter-policy stacking waiver.

The parties' arguments ably develop the competing constructions of Section 1738 here at issue.[12] The Craleys' argument conforms to the Superior Court's caselaw that inter-policy stacking is not waivable. First, as in the relevant Superior Court decisions, the Craleys assert that Section 1738(a) provides for inter- and intra-policy stacking: "When more than one vehicle is insured under *one or more* policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured." 75 Pa.C.S. § 1738(a) (emphasis added); *see Rizzo*, 835 A.2d at 363; *Stacking Litigation*, 754 A.2d at 708. More controversially, the Craleys rely on the Superior Court's reasoning in those cases, as discussed below, to support the conclusion that the waiver reflected in subsections (b), (c), and (d) applies only to intra-policy stacking.

In *Stacking Litigation*, insureds asserted class action claims sounding in various causes of action based on the insureds'

11. Judge Bender filed a concurring and dissenting opinion in which he agreed with the determination that the household vehicle exclusion was dispositive of the case, but dissented from what he considered to be an unnecessary discussion of the validity of inter-policy stacking waiver.

12. The parties understandably devote substantial portions of their briefs to the validity of the household exclusion that was the basis for the Superior Court's decision. However, we find it unnecessary to summarize their arguments in this regard, as they are not relevant to our analysis of Section 1738.

assertion that companies wrongly charged increased insurance premiums to holders of single-vehicle policies based on the provision of stacked coverage, which the insureds claimed was only applicable to policies covering multiple vehicles. The trial court transferred the question to the Pennsylvania Insurance Commissioner.

The Insurance Commissioner entered her declaratory opinion and order in *Leed v. Donegal Mutual Insurance Co.*, Docket Number MS96–10–055, on February 23, 1998, set forth at Appendix A of the Appellee's Brief. In her opinion, the Commissioner concluded that the stacking premium was lawful because she found that single-vehicle policy holders could obtain a real benefit from the provision of stacking in at least two situations: (1) where the insured is injured in his own vehicle insured with uninsured motorist coverage and is also covered as an insured under another policy providing uninsured motorist benefits, and (2) where the individual is injured in a vehicle other than his own insured vehicle and is an insured under the non-owned vehicle's policy, which also has uninsured motorist coverage (such as an employer's vehicle). The Commissioner additionally noted that Section 1738(a) did not exclude stacking of underinsured motorist benefits in single-vehicle policies.

The Commissioner nominally declined to decide the peripheral issue of whether and how inter-policy stacking could be waived, *see id.* at 4 n. 1. She nonetheless addressed the issue, noting that the waiver option in Section 1738(b) is not qualified as to the type of stacking to which it applies and allows waiver of both multiple and single-vehicle policies: "Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages...." 75 Pa.C.S. § 1738(b). While finding subsection (b) applicable to multiple- and single-vehicle policies, she acknowledged that subsections (c) and (d) specifically addressed multiple-vehicle policies, observing that subsection (c) required only insurers of multiple-vehicle policies to provide insureds the option to waive stacking with the provision of the form specified in subsection (d). *See* 75 Pa.C.S. § 1738(c)

("Each named insured purchasing uninsured or underinsured motorist coverage for *more than one vehicle under a policy* shall be provided the opportunity to waive the stacked limits of coverage"), § 1738(d) ("By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits *for each motor vehicle insured under the policy*.") (emphasis added).

Moreover, the Commission addressed a booklet issued by the Department and codified at 31 Pa.Code § 68.604, which some litigants read as evidence of the Department's policy to limit waiver to multiple-vehicle policies.   Contrarily, the Commissioner found the booklet did not limit waiver under subsection (b) to individual policies addressing two or more vehicles, but rather merely addressed the application of the waiver form as related to subsection (c) and (d).   The Commissioner suggested that the Department would "evaluate whether to issue a pre-approved waiver form for single-vehicle policies in addition to the present Department practice of approving forms and rates of each insurer."   *Id.* at 14 n. 9. Thus, the Commissioner concluded, "Section 1738 permits single vehicle policy stacking and requires that insureds have the opportunity to waive this coverage.   Rates commensurate with the risks assumed have been approved by the Department."   *Id.* at 15.

Upon receipt of the Commissioner's decision, the trial court dismissed the insureds' complaint based on the Commissioner's conclusion that the premiums were proper.   On appeal, the Superior Court acknowledged the deference due the Insurance Commissioner, in light of her agency's role in administering and enforcing the MVFRL in regard to insurers' practices and premiums.   *Stacking Litigation,* 754 A.2d at 706–07 (citing *Donnelly v. Bauer,* 553 Pa. 596, 720 A.2d 447, 453 (1998)).   In answering the question before it, the Superior Court held that the trial court had not erred in dismissing the class action suit regarding the propriety of the premiums charged for stacking in single-vehicle policies.

The Superior Court also addressed the issue of waiver. The court concurred with the Commissioner that Section 1738(a) provides for inter- as well as intra-policy stacking. The court additionally noted that the waiver provision in Section 1738(b) speaks of waiver generally without distinguishing between inter- and intra-policy stacking. Diverging from the Commissioner's conclusions *sub silentio*, however, the court found ambiguity when construing subsections (a) and (b), which speak generally to stacking, *in pari materia* with subsections (c) and (d), which specifically address only multiple-vehicle policies. Evidently by ignoring subsection (b)'s provision of waiver of the stacking required by subsection (a) without distinguishing inter- and intra-policy stacking, the court focused upon subsections (c)'s and (d)'s restricted application. The court concluded that it could not hold that the notice set forth in subsection (d) must be provided in both inter- and intra-policy stacking situations, as to do so would conflict with subsection (c)'s application to multiple-vehicle policies only. Without contemplating whether notice could otherwise be provided, the court instead resolved the ambiguity by construing subsections (b) and (c) together to provide that "only named insureds who purchase coverage for more than one vehicle under a single policy will be entitled to notice and the opportunity to waive stacking," finding that, "[h]ad the legislature intended [to permit] all named insureds to waive stacking, it would have utilized different language in subsection (d)." *Id.* at 708.[13]

---

**13.** The Superior Court considered this analysis as binding in *Harris*, 826 A.2d at 884, *Rizzo*, 835 A.2d at 363–64, and in the case *sub judice*, *Craley III*, 844 A.2d at 574. Conversely, in reviewing his own decision in *Stacking Litigation*, Judge Joyce, writing for an *en banc* majority in *Generette v. Donegal Mutual Insurance Co.*, 884 A.2d 266 (Pa.Super.2005), *pet. for allowance of appeal filed*, recently found that the analysis of the inter-policy stacking waiver issue constituted *obiter dictum* in *Stacking Litigation*, and that the analysis in the other cases was "best described as the stacking of stacking dicta." 884 A.2d at 276. Acknowledging the criticism of the waiver precedent in *Craley III*, the panel majority in *Generette* relied upon the Commissioner's analysis set forth, *supra*, in *Leed*, and concluded that single-vehicle policyholders could waive stacking. The majority found no relief due to the claimant after applying the policy endorsement applicable after waiver of stacking.

While the Craleys rely on the Superior Court's analysis in *Stacking Litigation*, State Farm interprets Section 1738 as providing for the waiver of both inter- and intra-policy stacking, relying in large part on the Insurance Commissioner's interpretation set forth in *Leed*, which State Farm asserts deserves our deference. While acknowledging that subsections (c) and (d) address intra-policy stacking waiver to the exclusion of inter-policy stacking, State Farm asserts that nothing in the section prohibits the waiver of inter-policy stacking. Indeed, State Farm argues that to deny insureds the ability to obtain a reduced premium in exchange for the waiver of stacking on a policy covering a single-vehicle would be contrary to the cost-containment purpose of the MVFRL and would unfairly penalize those who only own one vehicle, who would be unable to avail themselves of the cost-saving measure. State Farm notes that the Craleys chose to insure their cars with limited uninsured motorist coverage, which included the stacking waiver, and consequently, received a reduced premium. To allow them to stack the coverage despite their waiver, according to State Farm, would force State Farm to provide an amount of coverage for which it was not compensated.

In construing any statute, our goal is to "ascertain and effectuate the intention of the General Assembly."[14] 1 Pa.C.S. § 1921(a). In doing so, we must give effect to all the provisions. *See id.* While we must not disregard the clear words of an unambiguous statute under the pretext of pursu-

In a vehement dissent joined by three colleagues, Judge Ford–Elliot asserted first that even if the waiver analysis was *dictum* in *Stacking Litigation*, it became binding precedent with the Superior Court's decision in *Rizzo*. Secondly, she contested the applicability of stacking provisions to a situation where the plaintiff was not an "insured" under one of the policies at issue, but was merely a passenger. She argued that resolution should instead hinge on the appropriate priority of recovery pursuant to Section 1733.

We need not determine whether the Superior Court's prior precedent in the area constitutes *dictum* as it would not be binding on this Court in any event.

**14.** As with all questions of law, our standard of review is *de novo* and our scope of review is plenary. *See Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002).

ing its spirit, we nevertheless must look beyond the language when the words of a statute are not explicit and consider, *inter alia,* the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, and the object to be attained. 1 Pa.C.S. §§ 1921(b), (c). Moreover, we must construe statutes liberally to give effect to their purposes and promote justice. 1 Pa.C.S. § 1928(c).

■ Initially, we acknowledge that, in contrast to the explicit provisions for waiver in multiple-vehicle policies, Section 1738 does not designate specifically whether or how inter-policy stacking can be waived when individual vehicles are insured through single-vehicle polices. Section 1738(a), however, unambiguously provides for inter- as well as intra-policy stacking, thus expressing the clear intention of the General Assembly to compel insurers to provide stacking coverage absent a valid waiver. 75 Pa.C.S. 1738(a) ("When more than one vehicle is insured under *one or more policies* providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured." (emphasis added)).

Subsection (b), which provides named insureds the option to waive stacked coverage, however, is silent as to its application to single-vehicle and multiple-vehicle policies. 75 Pa.C.S. § 1738(b) ("Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured."). This contrasts with the explicit limitation in subsection (c) entitled "more than one vehicle," which requires insurers to provide only insureds insuring "more than one vehicle under a policy" with the opportunity to waive stacking pursuant to the form set forth in subsection (d).[15]

15. Subsection (d) also specifically applies to multiple-vehicle policies as it refers to the stacked coverage as "the sum of the limits for each motor vehicle insured under the policy," whereas subsection (a) refers

To the extent that subsection (b) manifests ambiguity, we look to the legislative purposes underlying the statute. *See* 1 Pa.C.S.1921(c) (providing for ascertainment of legislative intent by looking to the purpose of the statute and the mischief to be remedied). To prohibit waiver in single-vehicle policies, as the Craleys' reading of subsection (b) would have us do, would conflict with the cost-containment purpose of the MVFRL because it would prevent a class of insureds from taking advantage of a method to reduce their premiums. Conversely, to allow all insureds the opportunity to waive stacking would accord with this Court's view of the MVFRL and its amendments as a "scheme for motorist insurance which has been adjusted to preserve the core remedial aspects while also promoting, with increasingly greater emphasis, the containment of insurance costs." *Lewis v. Erie Ins. Exch.,* 568 Pa. 105, 793 A.2d 143, 152 (2002). As we have previously noted, "While cost containment is not the only objective of the [MVFRL], it has become an increasingly significant one, and it is apparent that the General Assembly has been employing the vehicle of free consumer choice with greater frequency in furtherance of this objective." *Id.* at 154. Thus, we resolve any ambiguity present in subsection (b) in favor of allowing consumers the choice to waive the coverage and thereby reduce their premiums.

This construction of subsection (b) to provide inter-policy stacking waiver, it bears noting, harmonizes with the Insurance Commissioner's interpretation of the statute in her 1998 decision in *Leed,* discussed *supra. See Winslow–Quattlebaum v. Maryland Ins. Group,* 561 Pa. 629, 752 A.2d 878, 881 (2000) ("It is well settled that when courts of this Commonwealth are faced with interpreting statutory language, they afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation."). We refuse to limit the provision of waiver in subsection (b) merely because the legislature set forth a specified method of waiver in regard to a subset of policies under subsections (c)

to stacked coverage as "the sum of the limits for each motor vehicle as to which the injured person is an insured."

and (d). *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions"). Indeed that the legislature saw fit to single out multiple policies in subsection (c) suggests the infirmity of imputing a similar intent with regard to subsections in which the legislature made no such specification. Accordingly, we refuse to construe the interplay between subsections (b), (c), and (d) to ban the waiver of stacking in single-vehicle polices, and thus inter-policy stacking.

However, the conclusion that inter-policy stacking may be waived does not end our analysis. We must determine how it may be waived. Subsection (d), which provides the necessary waiver form for multiple-vehicle policyholders, indicates that the legislature felt it necessary to require insurers to provide insureds with specific language in written form to ensure ample notice of the benefits to be waived. Moreover, the legislature imposed a significant sanction on an insurance company that deviates from the form, voiding any "rejection form that does not comply with this section." 75 Pa.C.S. § 1738(e). Given the form required by subsection (d), the sanction provided in subsection (e), and the imperative language granting stacking to all insureds in subsection (a), it is readily apparent that some form of knowing waiver must occur before we allow enforcement of an inter-policy stacking waiver. As Chief Justice Cappy previously has commented, "It is evident that the General Assembly sought to ensure that policyholders would be given full information regarding availability of stacked coverage before deciding whether or not to reject it." *Rupert v. Liberty Mut. Ins. Co.,* 566 Pa. 387, 781 A.2d 132, 135 (2001).[16]

16. In *Rupert,* this Court considered the technical requirements of stacking waiver under Section 1738. A six-member panel of this Court divided evenly on a certified question from the United States Court of Appeals for the Third Circuit as to whether, under subsection (e), an insurer must secure a signed waiver by the current first named insured or merely secure a signed waiver by the first named insured at the time of policy inception only. Two justices joined (now Chief) Justice Cappy in concluding that it would "violate[ ] the legislative goal of ensuring knowledgeable rejection of coverage" to hold that the waiver provision

██ State Farm claims that Randall's signing of the form set forth in subsection (d) constitutes waiver of inter-policy stacking. The form provides as follows:

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

While the language of subsection (d) is unambiguous in regard to the sufficiency of waiver of intra-policy stacking as it speaks to stacking as "the sum of the limits for each motor vehicle insured under *the policy*," the language does not clearly address an inter-policy stacking waiver, which would involve the limits for each motor vehicle insured under the *policies*. 75 Pa.C.S. § 1738(d) (emphasis added). Therefore, we must determine whether, under the circumstances of this case, the form put Randall on clear notice that he was waiving inter-policy stacking.[17]

could be satisfied without requiring the subsequent waiver of any new first named insured. *Rupert*, 781 A.2d at 135–136.

17. In construing ambiguous language in an insurance contract, we generally construe the language against the insurance company as the drafter of the contract. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999) ("Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement."). However, in this case, the language at issue was not drafted by the insurer but by the General Assembly. Indeed, the legislature declared, "[a]ny rejection form that does not comply with this section is void." 75 Pa.C.S. § 1738(e). Additionally, although we have at times asserted that the MVFRL must be accorded a liberal construction in favor of the insured, *see Hoffman v. Troncelliti*, 576 Pa. 504, 839 A.2d 1013, 1019 (2003), based on the rule of statutory construction that statutory provisions "shall be liberally construed to effect their objects and to promote justice," 1 Pa.C.S. § 1928(c), we have also noted, as previously discussed in this opinion, that the primary purpose of the MVFRL and especially the 1990 amendments, and thus the object to be achieved, is to control costs of insurance such that a higher percentage of drivers may be able to afford insurance.

We conclude that Randall had sufficient notice and that his waiver of inter-policy stacking was knowing. Randall signed the form stating, "I understand that my premiums will be reduced if I reject this coverage." Randall could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only one vehicle on "the policy." Absent the applicability of intra-policy waiver, the only interpretation fairly available to Randall was that his premium-reducing waiver applied to inter-policy stacking. Therefore, we conclude that the waiver is valid and enforceable under the facts of this case.[18]

This conclusion is supported by the public policy concern driving our decisions in the household vehicle exclusion cases. In those cases, we held that the public policy of cost-containment "functions to protect insureds against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure," and prevents insureds from "receiving gratis coverage." *Burstein*, 809 A.2d at 208. Thus, insurers are not "compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively." *Id.*; *see Eichelman*, 711 A.2d at 1010 (acknowledging the significance of the "correlation between premiums paid by the insured and the coverage a claimant should reasonably expect to receive"); *Colbert*, 813 A.2d at 760 (Castille, J., dissenting) ("The overriding concern powering the decisions in *Burstein*, *Eichelman* and the other earlier cases is to ensure that both the insurer

18. Although we conclude that the waiver in this case was knowing, our consideration nonetheless raises questions as to whether the waiver would be knowing if Randall's policy had covered more than one vehicle. If a named insured insures some cars under one policy ("the policy") and others under a separate policy ("the second policy") and signs the form provided in subsection (d) which refers to the waiver of stacking "for each motor vehicle insured under *the policy*," that named insured reasonably could assume that he received a reduced premium for waiver of the stacking of the limits regarding the vehicles insured by "the policy" with no knowledge that he was waiving stacking of the applicable limits of "the policy" to "the second policy," despite paying premiums on both policies. We urge the legislature or the Commissioner to clarify whether and how insurers may secure a valid waiver in such a case.

and insured receive the benefit of what is statutorily required and contractually agreed-upon (consistently with statutory requirements) and nothing more.").

Therefore, we hold that inter-policy stacking can be waived and, in fact, was waived under the facts of this case. The waiver thus prevents the Craleys from recovering the "sum of the limits for each motor vehicle as to which the injured person is an insured." 75 Pa.C.S. § 1738(a). Instead, because State Farm paid the Craleys $30,000 under Jayneann's policy, which was the stated limit under both Jayneann's policy and Randall's policy, they can not claim any additional benefit under Randall's policy. Thus, we affirm the decision of the Superior Court reversing the trial court and remanding for entry of summary judgment in favor of State Farm.

Justice CASTILLE, Justice NEWMAN and Justice SAYLOR join the opinion.

Former Justice NIGRO did not participate in the decision of this case.

Chief Justice CAPPY files a concurring opinion.

Justice EAKIN files a concurring opinion.

Chief Justice CAPPY, concurring.

I am constrained to join the result reached by the Majority Opinion. I write separately in order to express my views regarding the inconsistency between the written rejection form found at 75 Pa.C.S. § 1738(d)(1) and the remainder of Section 1738 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1738.

In my view, the plain language of Subsection (a) of 1738 allows for both inter- and intra-policy stacking of uninsured and underinsured motorist coverage. Similarly, unlike the Majority, I believe the plain language of Subsection (b) of 1738 generally provides named insureds with the option to waive stacking of uninsured and underinsured motorist coverage, which would include both inter- and intra-policy stacking. Subsection (c) specifically requires, *inter alia*, that each

named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy must be provided with the opportunity to waive the stacking of such coverage. Subsection (d)(1) of 1738 moves back to the general and instructs that "[t]he named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing" the legislatively prescribed written rejection form. 75 Pa.C.S. § 1738(d)(1).

All of this leads me to the conclusion that the Legislature intended to allow for inter- and intra-policy stacking of uninsured and underinsured motorist coverage and for the waiver of the same. With that said, when measured against the remainder of Section 1738, there is an inconsistency in the aforementioned written rejection form regarding the waiver of inter-policy stacking.

The written rejection form reads as follows:

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under *which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy.* Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

75 Pa.C.S. § 1738(d)(1) (emphasis added). The emphasized language above seems to indicate that if a named insured would decide not to waive stacking, then the amount of coverage available would be the sum of the limits for each vehicle insured under the named insured's policy. This rejection form, therefore, appears to speak only to the effects of intra-policy stacking and not to the effects of inter-policy stacking, which would permit the limits of coverage available to be the sum of the limits for each motor vehicle insured under the policy and/or any other relevant policies. I respectfully submit that the General Assembly could cure the inconsistency between the written rejection form and the remainder

of Section 1738 if the General Assembly would amend the written rejection form as follows:

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy *or the policies.* Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

I do not believe that the inconsistency between the written rejection form and the remainder of Section 1738 renders Randall Craley's particular rejection of the stacking of uninsured or underinsured motorist coverage invalid or unenforceable as it applies to inter-policy stacking. The reality is that because Mr. Craley only insured one vehicle under his policy, when he signed the rejection form, he "could not have thought he was receiving a reduced premium for waiving intra-policy stacking [since] there could be no intra-policy stacking with only one vehicle on 'the policy.'" Majority Opinion 586 Pa. at 504, 895 A.2d at 542. I, therefore, am able to join the result reached by the Majority Opinion.

Justice EAKIN, concurring.

I join Chief Justice Cappy's interpretation of 75 Pa.C.S. § 1738, as I believe subsection (b) provides a named insured the option of waiving both inter- and intra-policy stacking of uninsured and underinsured motorist coverage, and that option is not undone by subsections (c) and (d), even though the language of those subsections seems to speak to the intra-policy situation alone.

I write separately to address the household vehicle exclusion in Randall's policy, *see* Majority Op., 586 Pa. at 488–92, 895 A.2d at 533–34, which State Farm argues is valid and enforceable. While the majority does not reach a discussion of this clause, I believe the clause also precludes the Craleys' recovery of uninsured motorist benefits under Randall's poli-

cy. This clause is similar to household vehicle exclusion clauses this Court previously has held enforceable. *See Prudential Property and Casualty Insurance Company v. Colbert,* 572 Pa. 82, 813 A.2d 747, 755 (2002) (household exclusion consistent with public policy of MVFRL); *Eichelman v. Nationwide Insurance Company,* 551 Pa. 558, 711 A.2d 1006, 1010 (1998) (household exclusion enforceable as it furthers legislative policy behind underinsured motorist coverage in MVFRL and furthers MVFRL's intent of stopping spiralling costs of automobile insurance). There is no reason, public policy or otherwise, to not enforce this exclusion.

For the reasons offered above, I concur.