**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COREY DONOVAN; LINDA DONOVAN, | : | No. 17 EAP 2020 |
| | : | |
| Appellees | : | Certification of Questions of State |
| | : | Law from the United States Court of |
| | : | Appeals for the Third Circuit at No. |
| v. | : | 19-2733 |
| | : | |
| | : | ARGUED:  December 1, 2020 |
| STATE FARM MUTUAL AUTOMOBILE | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Appellant | : | |


## OPINION


**CHIEF JUSTICE BAER**                    **DECIDED:  AUGUST 17, 2021**

In this case, we granted review of three questions of law certified by the United States Court of Appeals for the Third Circuit regarding application of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL").  First, we consider whether an insured's signature on the waiver form mandated by 75 Pa.C.S. § 1738(d) results in the insured's waiver of inter-policy stacking of underinsured motorist ("UIM") coverage where the relevant policy insures multiple vehicles.[1]  After deeming the waiver invalid as applied to inter-policy stacking for multi-vehicle policies in light of this Court's decision in *Craley v. State Farm Fire and Casualty Co.*, 895 A.2d 530 (Pa. 2006), we next determine whether

---

[1] As discussed *infra*, inter-policy UIM stacking provides for the addition of UIM coverage limits applicable to vehicles insured on separate policies.  In contrast, intra-policy UIM stacking describes the addition of UIM coverage limits applicable to multiple vehicles insured on the same policy.

the policy's household vehicle exclusion is enforceable following this Court's recent decision in *Gallagher v. GEICO Indemnity Company*, 201 A.3d 131 (Pa. 2019). Finally, after concluding that the household vehicle exclusion is unenforceable absent a valid waiver of inter-policy stacking, we address the third question posed by the Court of Appeals regarding the applicability of the policy's coordination of benefits provision for unstacked UIM coverage. After review, we hold that the policy's coordination of benefits provision for unstacked UIM coverage does not apply absent a valid waiver of inter-policy stacking. Having answered these questions of law, we return the matter to the United States Court of Appeals for the Third Circuit.

The parties do not contest the facts of the case, which are set forth in a Stipulation of Facts dated March 2018. In July 2015, Corey Donovan ("Corey") suffered significant injuries due to a collision between a motorcycle, which he owned and was operating, and an underinsured vehicle. He recovered the $25,000 limit of coverage available under the policy insuring the underinsured vehicle as well as the $50,000 per person limit of UIM coverage available under Corey's policy insuring the motorcycle ("Motorcycle Policy"), which was issued by State Farm Automobile Insurance Company ("State Farm").[2]

Corey then sought coverage under a policy issued by State Farm to his mother, Linda Donovan ("Linda"), under which he was insured as a resident relative ("Linda's Auto Policy"). Linda's Auto Policy insured three automobiles but not Corey's motorcycle. Linda's policy had a UIM coverage limit of $100,000 per person, and Linda signed a waiver of stacked UIM coverage on her policy which complied with the waiver form mandated by Section 1738(d) of the MVFRL. The waiver provided as follows:

UNDERINSURED COVERAGE LIMITS

---

[2] Although not relevant for purposes of this case, Corey waived stacked UIM coverage on his motorcycle policy.

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under *the policy* for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under *the policy*. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in *the policy*. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

Stipulation of Facts, Ex. 2 at 11 (emphasis added); *see also* 75 Pa.C.S. § 1738(d)(2). As noted, this statutorily-mandated waiver repeatedly references the limits of "the policy" rather than overtly addressing the effect of the waiver when multiple insurance policies apply for purposes of inter-policy stacking. As developed in detail *infra*, this Court in *Craley* questioned whether the form's language provides insureds with the necessary information to allow a knowing waiver of inter-policy stacking due to the form's use of the singular term "policy."

Additionally, the policy booklet setting forth the terms of Linda's Auto Policy included descriptions of two types of UIM coverage: Coverage W, designated the "Stacking Option"), and Coverage W3, labeled the "Non-stacking Option." Stipulation of Facts, Ex. 2, State Farm Car Policy Booklet at 23. The Declarations Page of Linda's Auto Policy indicated that Coverage W3 applied to the vehicles covered by her policy.

Two provisions of Coverage W3 are directly relevant to the issues before this Court. First, Coverage W3 contained what has been termed the "household vehicle exclusion," the language of which provides as follows:

> Exclusions – Coverage W3
>
> THERE IS NO COVERAGE FOR AN INSURED WHO SUSTAINS BODILY INJURY WHILE OCCUPYING A MOTOR VEHICLE OWNED BY YOU OR ANY RESIDENT RELATIVE IF IT IS NOT YOUR CAR OR A NEWLY ACQUIRED CAR.

*Id.* at 26 (emphasis removed). The policy defined the term "your car" as "a vehicle shown under YOUR CAR on the Declaration Page." *Id.* at 7. As Corey's motorcycle was not included on the Declaration Page of Linda's Auto Policy, all agree that the motorcycle did not fall within the definition of "your car" under her policy. Accordingly, if valid, the unambiguous language of the household vehicle exclusion would prohibit any coverage under Linda's Auto Policy for Corey's injuries while operating his motorcycle.

Coverage W3 additionally set forth a coordination of benefits provision addressing the limits of coverage in the event multiple State Farm policies applied to an incident of bodily injury:

> If Other Underinsured Motor Vehicle Coverage Applies - Coverage W3
>
> If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to you or any resident relative by one or more of the State Farm Companies apply to the same bodily injury, then:
>
> a. the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and
>
> b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment.

*Id.* at 27 (emphasis removed). Assuming that the household vehicle exclusion did not operate to bar all coverage, this provision, if applicable and valid, would limit Corey's total recovery from State Farm to the $100,000 provided by Linda's Auto Policy, because it is the "single highest applicable limit" provided by either policy. Practically, application of

this provision would result in State Farm paying an additional $50,000 in addition to the $50,000 paid pursuant to the Motorcycle Policy.[3]

Based upon Linda's signature on the Section 1738(d) stacking waiver form, State Farm denied coverage for the injuries Corey suffered while riding his motorcycle. Corey and Linda (collectively "Donovans") filed a complaint seeking declaratory relief in the Philadelphia Court of Common Pleas. They claimed, *inter alia*, that Linda's waiver of stacking was invalid as to inter-policy stacking and that Corey should receive the benefit of stacked UIM coverage which would provide up to an additional $100,000 of UIM

---

[3] In contrast, Coverage W's coordination of benefits applicable to stacked UIM coverage does not include the limiting language set forth in Coverage W3 and instead provides, in part, as follows:

> If Other Underinsured Motor Vehicle Coverage
> Applies - Coverage W
>
> 1. If underinsured motor vehicle coverage for bodily injury is available to an insured from more than one policy provided by us or any other insurer, any coverage applicable:
>
> a. under this policy shall apply on a primary basis if the insured sustains bodily injury while not occupying a motor vehicle or trailer
>
> b. to the vehicle covered under this policy which the insured was occupying when the bodily injury was sustained shall apply on a primary basis. Any other coverage provided by this policy shall apply on an excess basis.
>
> c. under this policy shall apply on an excess basis if the insured sustains bodily injury while occupying a vehicle other than your car.

*Id.* at 26. If applicable, this provision would allow Corey to receive up to an additional $100,000 of coverage from Linda's Auto Policy on top of the $50,000 that he received from his Motorcycle Policy.

coverage under Linda's Auto Policy on top of the $50,000 Corey received from the Motorcycle Policy.[4]

After removing the case to the United States District Court for the Eastern District of Pennsylvania ("District Court") based upon diversity jurisdiction, State Farm filed an answer contending that Linda's waiver of stacked coverage was valid as to both inter- and intra-policy stacking and that the Coverage W3 provisions, including the household vehicle exclusion, applied to prevent recovery. State Farm included a counterclaim seeking a judicial declaration that Corey was not entitled to UIM benefits under Linda's Auto Policy for the injuries resulting from the motorcycle accident.

After stipulating to the facts, the parties filed cross motions for summary judgment to determine the legal questions of coverage. In their Motion for Summary Judgment, the Donovans maintained that Linda's signature on the Section 1738(d) waiver of stacked UIM coverage waived only intra-policy stacking of coverages for multiple vehicles on the same policy, but did not operate to waive inter-policy stacking of the coverages available for vehicles insured on separate policies. In support of this argument, the Donovans relied upon the this Court's decision in *Craley*, which questioned whether the Section 1738(d) waiver could operate as a knowing waiver of inter-policy stacked coverage in situations where the relevant policy covered multiple vehicles.[5]

Contending that Linda's waiver of stacked coverage was void and unenforceable as to inter-policy stacking, the Donovans also asserted that the Coverage W3 provisions, including the household vehicle exclusion and the coordination of benefits provision, did

---

[4] The Donovans acknowledged that Linda waived intra-policy stacking. Accordingly, they recognized that her total UIM coverage limit was $100,000, rather than the $300,000 that would have applied if she had not waived intra-policy stacking for the three cars on her policy.

[5] The decision in *Craley* is discussed in detail *infra*.

not apply in this case because those provisions only applied to unstacked UIM coverage. They further maintained that the household vehicle exclusion could not serve as an unacknowledged waiver of stacking, which they observed was an issue then pending before this Court in *Gallagher*.[6]

In its summary judgment motion, State Farm argued for the dismissal of the Donovans' claims and for a declaration that it did not owe any additional coverage to Corey. It asserted that Linda voluntarily signed the waiver form mandated by Section 1738(d) in exchange for reduced premiums, which resulted in the waiver of the right for insureds covered by her policy to stack UIM coverage and triggered the applicability of the Coverage W3 provisions, including the household vehicle exclusion. State Farm maintained that, because of the household vehicle exclusion, Linda's Auto Policy did not cover Corey's motorcycle, and thus did not provide any coverage for the injuries Corey suffered while riding it. State Farm rejected the applicability of the decision in *Gallagher*, which involved a plaintiff that, unlike Linda, had paid for stacked coverage rather than waiving it.

In June 2019, the District Court granted Plaintiffs' motion for summary judgment and denied State Farm's cross-motion, concluding that Corey was eligible for up to $100,000 of additional UIM benefits under Linda's Auto Policy. *Donovan v. State Farm Mut. Auto. Ins. Co.*, 392 F. Supp. 3d 545, 553 (E.D. Pa. 2019). In so doing, the court addressed the three questions of law that are currently before this Court.

First, it considered State Farm's claim that Linda waived both intra- and inter-policy stacking by signing the waiver form required by Section 1738(d). The District Court

---

[6] While the parties' motions for summary judgment were pending before the District Court, this Court decided *Gallagher*, holding that the household vehicle exclusion was unenforceable as applied to the facts of that case as a *de facto* waiver of stacking that violated the explicit waiver requirements of Section 1738(d), as discussed *infra*.

recognized that this Court in *Craley* questioned whether the language of the Section 1738(d) waiver form was sufficient to inform an insured that they were waiving inter-policy stacking when the policy involved multiple vehicles. *Id.* at 549-50 (discussing *Craley*, 895 A.2d at 541-42). The court acknowledged that this Court in *Craley* had sought clarification from the Legislature regarding the applicability of the Section 1738(d) waiver to inter-policy stacking in multi-vehicle policies. Observing that the General Assembly had not clarified the applicability of Section 1738(d) to inter-policy stacking involving multi-vehicle policies, the District Court concluded that Linda's signature constituted a knowing waiver of only intra-policy UIM stacking and not inter-policy UIM stacking.

The District Court also suggested that State Farm could have remedied the situation by seeking recourse from the Legislature or the Insurance Commissioner in the six years between the 2006 decision in *Craley* and Linda's 2012 signature on the waiver form. It further posed the potential that State Farm could have altered its waiver language to include reference to "policies" as opposed to only the singular "policy." The court cogently opined that "though there may be a defect in the waiver provision of the MVFRL, State Farm was well aware of that defect and of its obligation to secure a knowing waiver of inter-policy stacking. In the final analysis, the carrier must bear responsibility for the policy it issues." *Id.* at 551.

In regard to the second issue, the District Court reviewed our recent decision in *Gallagher*, which it read to hold "that the household exclusion violates the MVFRL and is therefore unenforceable as a matter of law" because it "functions as a *de facto* waiver of stacked coverage even if an insured has not validly waived it under the statute." *Id.* at 552. The District Court rejected State Farm's attempt to limit the reach of the *Gallagher* decision to cases where the insured had not waived stacking and, instead, had paid higher premiums for stacked coverage. The court opined that *Gallagher* controlled the

Donovans' case because Linda's stacking waiver was invalid; thus, like *Gallagher*, she also had not waived stacked UIM coverage. In such a case, the court concluded that the household vehicle exclusion could not operate as a *de facto* waiver of stacking.

Finally, the District Court considered the parties' arguments regarding the coordination of benefits provisions of Linda's Auto Policy. The court recognized that Linda's policy provided separate coordination of benefits provisions depending on whether the policy provided unstacked or stacked UIM coverage. Specifically, the court observed that Coverage W3 applied to unstacked coverage and limited recovery to the "single highest applicable limit provided by any of the policies," whereas Coverage W provided for excess coverage, allowing for recovery up to the policy limits. *Id.* at 553. The District Court opined that "[t]he consequence of a carrier's failing to secure a valid waiver of stacking is that the policy defaults to stacked coverage by operation of law." *Id.* Accordingly, the court concluded that Coverage W's coordination of benefits provision applied rather than the limited provision of Coverage W3 because Linda had not executed a valid waiver of inter-policy stacked UIM coverage. Therefore, the court held that Corey could recover up to an additional $100,000 of UIM coverage under Linda's Auto Policy.

After the District Court granted the Donovans' motion for summary judgment and denied State Farm's motion, State Farm appealed to the Court of Appeals for the Third Circuit. State Farm additionally requested that the Court of Appeals certify the questions raised to this Court, arguing that the case presented pure questions of Pennsylvania law which had yet to be decided by this Court. The Donovans, likewise, filed a motion to "certify the present appeal to the Supreme Court of Pennsylvania for review and disposition." Donovans' Motion to Certify at 5.

In May 2020, the Court of Appeals filed in this Court its Petition for Certification of Questions of State Law, concluding that the case raised unsettled questions of state law under the MVFRL. This Court granted the petition to review the following three questions:

> 1. Is a named insured's signing of the waiver form set out at 75 Pa.C.S. § 1738(d) sufficient to waive inter-policy stacking of underinsured motorist benefits under Pennsylvania's Motor Vehicle Financial Responsibility Law, where the policy insures more than one vehicle at the time the form is signed?

> 2. If the answer to Question 1 is no, is a household vehicle exclusion contained in a policy in which the named insured did not validly waive inter-policy stacking enforceable to bar a claim made by a resident relative who is injured while occupying a vehicle owned by him and not insured under the policy under which the claim is made?

> 3. If the answers to Questions 1 and 2 are no, is the coordination-of-benefits provision in the Automobile Policy nonetheless applicable, such that it limits . . . recovery of underinsured motorist benefits under the policy . . ., or does the lack of a valid waiver of inter-policy stacking render that provision inapplicable?

*Donovan v. State Farm Mut. Auto. Ins. Co.*, 237 A.3d 395 (Table) (Pa. 2020).[7]

As the questions presented involve pure questions of law, "our standard of review is *de novo*, and our scope of review is plenary." *Gallagher*, 201 A.3d at 137. Moreover, we reiterate that our goal in interpreting statutory language is to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). However, when the language is

---

[7] This Court accepted review of these certified questions pursuant to Pa.R.A.P. 3341, which restricts review to specified questions of law, including questions of first impression that are of "such substantial public importance as to require prompt and definitive resolution by the Supreme Court."

ambiguous, the Statutory Construction Act guides us to consider, *inter alia,* the "occasion and necessity for the statute" and the "object to be obtained." *Id.* § 1921(c). As this case involves the intersection of statutory provisions and contractual language, we reiterate that "provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing law." *Gallagher*, 201 A.3d at 137.

### I. Application of Section 1738(d) Waiver to Inter-Policy UIM Stacking in Multi-Vehicle Policies

We first address whether Linda's signature on the form required by Section 1738(d) results in the waiver of Corey's right to stacked UIM coverage under Linda's Auto Policy. Our review of this question is rooted in this Court's decision in *Craley v. State Farm Fire and Casualty Co.*, 895 A.2d 530 (Pa. 2006).

The facts in *Craley* involved the tragic death of Jayneann Craley and injuries to her son and mother-in-law resulting from a collision with an uninsured vehicle. At the time of the accident, Jayneanne was driving a vehicle that she owned and insured with State Farm. After recovering the limits provided under Jayneann's State Farm policy, her estate sought uninsured motorist ("UM") coverage under her husband Randall Craley's State Farm policy, pursuant to which Jayneann was insured as a resident relative. Relevantly, Randall insured only his pick-up truck (which was not involved in the accident) on this policy; thus, it was a single-vehicle policy in contrast to Linda Donovan's multi-vehicle policy at issue in the instant case. State Farm denied coverage under Randall's policy, asserting that Randall waived stacked UM coverage when he signed the waiver form mandated by Section 1738(d).[8]

---

[8] While *Craley* involved uninsured rather than underinsured motorist coverage as is applicable to the Donovans, the language set forth in Section 1738(d) for the waiver of uninsured and underinsured stacked coverage is identical but for the substitution of

This Court eventually granted review to consider whether inter-policy stacking could be waived and, if it could, whether the Section 1738(d) waiver was valid under the facts of that case. After engaging in a detailed statutory analysis, the Court concluded that Section 1738 allowed insureds to waive inter-policy stacking as well as intra-policy stacking.[9]

---

"uninsured" for "underinsured." Accordingly, we find no difference in the analysis of these two provisions in regard to the waiver of inter-policy stacking.

[9] In full, Section 1738 provides:

> (a) Limit for each vehicle. - When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.
>
> (b) Waiver. - Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.
>
> (c) More than one vehicle.--Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.
>
> (d) Forms. -

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

UNINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

_____
Signature of First Named Insured

_____
Date

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

_____

Having found that insureds could waive inter-policy stacking, we next considered whether the statutory form mandated by Section 1738(d) constituted an effective waiver, emphasizing that "some form of knowing waiver must occur before we allow enforcement of an inter-policy stacking waiver." *Craley*, 895 A.2d at 541. We observed, however, that the Section 1738(d) form was phrased in terms of intra-policy stacking involving multiple vehicles on a single policy, rather than inter-policy stacking of multiple policies. Indeed, the waiver explains that the stacked coverage being rejected, in exchange for reduced premiums, would have provided "the sum of limits for each motor vehicle insured under the policy," rather than under "the policies." 75 Pa.C.S. § 1738(d). We nevertheless recognized that insurers were required by the General Assembly to utilize the forms set forth in Section 1738(d), highlighting that Section 1738(e) cautions insurers that "[a]ny rejection form that does not comply with this section is void." *Id.* § 1738(e).

While acknowledging that the language seemingly did not encompass inter-policy stacking, we held that it was enforceable as a knowing waiver of inter-policy stacking in single-vehicle policies. Specifically, we concluded that Randall had knowingly waived inter-policy stacking because he "could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only one vehicle on 'the policy.'" *Craley*, 895 A.3d at 542.

_____
Signature of First Named Insured

_____
Date

> (e) Signature and date.--The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

75 Pa.C.S. § 1738.

As relevant to the issue raised in the instant case regarding Linda Donovan's purported waiver of inter-policy stacking, we questioned in *Craley* whether the Section 1738(d) waiver could operate as a knowing waiver of inter-policy stacking when applied to a policy involving multiple vehicles, in contrast to Randall's single-vehicle policy. We explained the conundrum in the following footnote:

> Although we conclude that the waiver in this case was knowing, our consideration nonetheless raises questions as to whether the waiver would be knowing if Randall's policy had covered more than one vehicle. If a named insured insures some cars under one policy ("the policy") and others under a separate policy ("the second policy") and signs the form provided in subsection (d) which refers to the waiver of stacking "for each motor vehicle insured under the policy," that named insured reasonably could assume that he received a reduced premium for waiver of the stacking of the limits regarding the vehicles insured by "the policy" with no knowledge that he was waiving stacking of the applicable limits of "the policy" to "the second policy," despite paying premiums on both policies. We urge the legislature or the Commissioner to clarify whether and how insurers may secure a valid waiver in such a case.

*Id.* at 542 n.18.

Chief Justice Cappy concurred, agreeing that Section 1738 contemplated inter- as well as intra-policy stacking and allowed for the waiver of both. He additionally proposed that the General Assembly amend the Section 1738(d) language to address inter-policy stacking as follows:

> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy *or the policie*s. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the

> stacked limits of coverage. I understand that my premiums will
> be reduced if I reject this coverage.

*Id.* at 543 (Cappy, C.J., concurring) (emphasis in original to indicate suggested amendment).

Notably, in the intervening fifteen years, the General Assembly has neither adopted Chief Justice Cappy's suggested addition nor has it clarified the language in Section 1738(d). The instant case presents the issue flagged in *Craley*: whether the statutorily-mandated waiver form of Section 1738(d) provides an insured with information necessary for a knowing waiver of inter-policy stacking where the insurance policy insures multiple vehicles.

Before this Court, State Farm contends that the Section 1738(d) waiver form is an enforceable rejection of both intra- and inter-policy stacking of UIM coverage that is valid regardless of the number of vehicles on a policy.[10] It argues that insurers would face a Catch-22 if this Court finds that Section 1738(d) does not constitute an effective waiver of inter-policy stacking on multi-vehicles polices. State Farm's Brief at 12. It emphasizes that the General Assembly requires insurers to offer insureds the ability to decline stacked coverage for all multi-vehicle policies in Section 1738(c), dictates the form to be used for waiver in Section 1738(d), and forbids any alteration of that form in Section 1738(e). Essentially, the insurers would be forced to offer insureds the ability to decline stacking, but insurers would nevertheless be required to provide the stacked coverage absent an enforceable waiver for inter-policy stacking in multi-vehicle policies.

---

[10] State Farm is supported by a brief filed by *amicus curiae* Citizens United Reciprocal Exchange (CURE) and by a joint brief filed by *amici curiae* Insurance Federation of Pennsylvania, Inc., Pennsylvania Association of Mutual Insurance Companies, Pennsylvania Defense Institute, Inc., American Property Casualty Insurance Association, National Association of Mutual Insurance Companies, and Philadelphia Association of Defense Counsel (hereinafter "Insurance Associations").

State Farm rejects the suggestion that insurers could edit the form as proposed by Chief Justice Cappy or develop a different form that would specifically address inter-policy stacking in multi-vehicle policies. It asserts that any alteration of the form by insurers "would be void under Section 1738(e) and would not constitute a valid waiver of either intra[-]policy or inter-policy stacking." *Id.* at 13. *Amicus* CURE further reasons that the addition of the words "the policies" to the waiver could not be deemed a permissible *de minimis* alteration because a revision that dramatically changes the coverage provided logically cannot constitute a *de minimis* change. CURE's Brief at 19-20 (citing *Ford v. American States Ins. Co.*, 154 A.2d 237 (Pa. 2017) (holding that a *de minimis* deviation from the statutorily-mandated form for rejecting UIM coverage did not invalidate the waiver for purposes of Section 1731 of the MVFRL).

State Farm likewise rejects the suggestion that insurers can merely provide a second waiver form specifically addressing the waiver of inter-policy stacked coverage for multi-vehicle policies, positing that it would also be void under Section 1738(e). Additionally, State Farm and its amici proffer that insurers would need to draft a multitude of waiver forms for various specific situations, which they argue would engender unnecessary confusion for insureds. In rejecting this proposal, the insurer claims that it "would be illogical to conclude that the legislature intended to specify the forms that must be used by insurers in offering all Act 6 cost-saving options" but allowed insurers to draft their own waivers solely for inter-policy stacking.[11] State Farm's Brief at 14 (citing 1 Pa.C.S. § 1922(a) (providing that one can presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable")).

---

[11] In support, State Farm identifies the required waiver forms for electing limited tort coverage in Section 1705(a)(1) and for waiving UM coverage in Section 1731(b) and UIM coverage in Section 1731(c). These provisions, in addition to Section 1738(d), were included in the amendments to the MVFRL contained in Act 6 of 1990.

State Farm also argues that we should interpret Section 1738(d)'s statutory waiver form liberally to promote the legislative purpose of the Act 6 amendments, *id.* (citing 1 Pa.C.S. § 1928(c)), which it contends were enacted to allow insureds the opportunity to lower their premiums by reducing coverage. As applied to Section 1738(d), it maintains that this legislative purpose would be supported by deeming the Section 1738(d) form to waive both inter- and intra-policy stacking. Moreover, it asserts that there is no reason to suggest that the Legislature intended the Section 1738(d) form to operate as a waiver of all stacked coverage but create an exception for inter-policy stacking in multi-vehicle policies. As applied to this case, it asserts that Linda's signature on the waiver form prescribed by Section 1738(d) operates to waive inter-policy as well as intra-policy stacked UIM coverage under her Auto Policy covering her three vehicles.[12]

In contrast, the Donovans argue that the Section 1738(d) waiver form does not provide a named insured with a knowing waiver of inter-policy stacked coverage when

---

[12] State Farm observes that this author in a dissent in *Erie Insurance Exchange v. Baker*, 972 A.2d 507, 517 (Pa. 2009) (plurality), *abrogated by Gallagher*, opined that any waiver of stacked coverage had to be secured through a signed Section 1738(d) form rather than via a household vehicle exclusion. Moreover, it observes that the Court in *Gallagher* also opined that the Section 1738(d) waiver form provided "insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver" as contrasted with a household vehicle exclusion. State Farm's Reply Brief at 4 (quoting *Gallagher*, 201 A.3d at 137). It asserts that these statements suggest that the Section 1738(d) waiver would have been valid in those cases, which involved inter-policy stacking for multi-vehicle policies.

We emphasize, however, that the validity of the Section 1738(d) stacking waiver was not at issue in either *Baker* or *Gallagher*, where the focus was instead on the validity of the household vehicle exclusion. We additionally observe that the holding in this case is consistent with the cited statement of the dissent in *Baker,* as we conclude that the only enforceable waiver of stacked coverage is that provided by the Legislature in Section 1738(d), but ultimately hold that that form fails to provide the necessary knowing waiver of inter-policy stacked coverage when applied to multi-vehicle polices.

applied to a multi-vehicle policy, as in the case at bar.[13]   Indeed, the Donovans assert that this Court in *Craley* held that the Section 1738(d) form's use of the phrase "under the policy" waives only intra-policy stacking when applied to multi-vehicle policies.[14] Donovans' Brief at 34.   In so doing they rely upon footnote 18, set forth *supra,* in which the Court recognized that the rationale of *Craley* "raise[d] questions as to whether the waiver would be knowing if Randall's policy had covered more than one vehicle."  *Id.* at 33 (*quoting Craley*, 895 A.2d at 542 n. 18).

Thus, the Donovans contend that Linda's signature on the Section 1738(d) waiver form included in her Auto Policy operated to waive only intra-policy stacking of the three vehicles covered by her policy and not inter-policy stacking between her policy's coverage and Corey's coverage under his Motorcycle Policy.  Accordingly, absent a knowing waiver of inter-policy stacking, the Donovans emphasize that the MVFRL dictates that stacking is the default coverage.  In support, the Donovans highlight this Court's recent emphasis on the MVFRL's remedial goal of providing compensation for those injured in motor vehicle accidents, in addition to acknowledging the goal of cost containment.  *Id.* at 11-13 (citing *Williams v. GEICO*, 32 A.3d 1195 (Pa. 2011) (citing concurring opinions of Justices Saylor, Baer, and Todd), and *Safe Auto Insurance Co. v. Oriental-Guillermo*, 214 A.3d 1257, 1266 (Pa. 2019)).  Therefore, the Donovans maintain that State Farm is

---

[13] The Pennsylvania Association for Justice filed an *amicus curiae* brief in support of the Donovans.

[14] Conversely, State Farm's *amicus curiae* CURE views the decision in *Craley* as rejecting the claim that the stacking waiver does not apply to inter-policy stacking.  As indicated by this Court's grant of the Court of Appeals' petition for certification, we agree with State Farm that the decision in *Craley* did not decide this issue but respectfully suggested that legislative attention might be merited, apparently without success given the absence of legislative action in the intervening fifteen years.

obligated to provide an additional $100,000 of stacked coverage to Corey under Linda's Auto Policy.

The Donovans propose that State Farm could have amended the form following this Court's decision in *Craley* by utilizing Chief Justice Cappy's suggested addition of the phrase "under the policy or policies." *Id.* at 37. They contend that this addition would be a "minor modification" that would not void the waiver under Section 1738(e), which forbids any modification. In support, the Donovans cite *Ford*, 154 A.3d 237, in which this Court opined that a form purporting to waive UIM coverage, was enforceable despite a *de minimis* deviation from the statutorily mandated form of Section 1731. Alternatively, they propose that State Farm could have drafted a second waiver form specifically to provide a knowing waiver of inter-policy stacking for multi-vehicle policies.[15]

As with all questions of statutory application, this Court is bound by the language enacted by the General Assembly and does not have the power to amend statutory language "under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). This restriction on judicial authority applies even in a case, such as this one, where the statutory language seemingly falters in fully achieving its goal.

---

[15] The Donovans propose the following language:

> By signing this waiver I am rejecting stacked limits of underinsured motorist coverage under the policy *and other household policies* for myself and members of my household under which the limits of coverage available will be the sum of limits for each motor vehicle under the policy *and other household policies*. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy *issued to me*. I knowingly and voluntarily reject stacked limits of coverage. I understand that my premiums have been reduced if I reject this coverage.

Donovans' Brief at 39-40 (emphasis in original to indicate changes).

We agree with State Farm that the General Assembly appears to have intended to grant all insureds the opportunity to reduce their premiums by waiving stacked UM/UIM coverage as set forth in Section 1738(b), providing that "a named insured may waive coverage providing stacking of uninsured or underinsured coverages." 75 Pa.C.S. § 1738(b). Moreover, as we held in *Craley*, the ability to waive coverage applies to both inter- and intra-policy stacking, so long as the insured is provided with the necessary information to allow a knowing rejection of stacked coverage. *Craley*, 895 A.2d at 540-41. There is no indication in Section 1738 that the General Assembly intended to excise from the ability to waive inter-policy stacked coverage the subset of insureds who insure multiple vehicles on a policy.

Nevertheless, we are bound by the language of Section 1738(d)'s waiver form, which provides: "I am rejecting stacked limits of underinsured motorist coverage under the policy . . . under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy." 75 Pa.C.S. § 1738(d). As highlighted in the majority and concurring opinions in *Craley*, this language informs insureds that they are waiving intra-policy stacking as they will not be provided the "sum of the limits for each motor vehicle under the policy." It does not, however, alert insureds that they are waiving the ability to stack the coverage for which premiums were paid in "this policy" on top of the coverage available under a separate policy. In other words, it does not provide the necessary knowing waiver of inter-policy stacked coverage, absent the single-vehicle situation in *Craley*.[16]

---

[16] As discussed *supra*, in *Craley,* the Court concluded that Section 1738(d)'s waiver form provided the insured sufficient knowledge of the waiver of inter-policy stacking where the insured knew that he was receiving reduced premiums for the waiver of stacking and could not have thought he was receiving reduced premiums due solely to the waiver of intra-policy stacking when he only insured one vehicle on the policy.

We recognize that insurers are placed in a Catch-22 as they are required to provide insureds the opportunity to waive UM/UIM stacking but without the ability to enforce the insureds' waiver of inter-policy stacked coverage in multi-vehicle policies because the statute mandates the use of the Section 1738(d) form. The remedy, however, is not with the courts but with the General Assembly, which has the power to amend its language to provide for waiver of inter-policy stacking on multi-vehicle polices. As in *Craley*, we again call on the Legislature to clarify the Section 1738(d) waiver language and its application to inter-policy UM/UIM stacking.

## II. Enforceability of Household Vehicle Exclusion

Having concluded that the Section 1738(d) waiver form signed by Linda is not a valid waiver of inter-policy UIM stacking in a multi-vehicle policy, we next consider whether the household vehicle exclusion included in the Coverage W3 provisions of Linda's Auto Policy operates to bar coverage for Corey. Again, the household vehicle exclusion in Linda's policy provides:

> THERE IS NO COVERAGE FOR AN INSURED WHO SUSTAINS BODILY INJURY WHILE OCCUPYING A MOTOR VEHICLE OWNED BY YOU OR ANY RESIDENT RELATIVE IF IT IS NOT YOUR CAR OR A NEWLY ACQUIRED CAR.

Stipulation of Facts, Ex. 2, State Farm Car Policy Booklet at 26. In this policy, the phrase "your car" refers to vehicles insured under the policy, which indisputably did not include Corey's motorcycle. Thus, there is no question that Corey's injuries sustained while operating his motorcycle would be excluded from coverage under the plain language of this provision. The question presented by this case, however, is whether this exclusion is enforceable following this Court's recent decision in *Gallagher v. GEICO Indemnity Company*, 201 A.3d 131 (Pa. 2019).

In *Gallagher*, the insured suffered severe injuries when his motorcycle collided with another vehicle, which was underinsured. Mr. Gallagher had purchased and paid increased premiums for stacked UM and UIM coverage on both the policy covering his motorcycle and the separate policy covering his two automobiles. Both policies were issued by GEICO, which required that the motorcycle be insured separately from the automobiles. The automobile policy included a household vehicle exclusion similar to the exclusion in Linda's Auto Policy.[17] As in the case at bar, GEICO denied coverage based upon the household vehicle exclusion because Mr. Gallagher suffered his injuries while operating the motorcycle, a vehicle that was not insured by the automobile policy. Mr. Gallagher countered that he had paid increased premiums for stacked coverage and that the household vehicle exclusion should not operate as "disguised waiver of stacking" that failed to satisfy the statutorily-mandated waiver requirements of Section 1738(d). *Id.* at 136.

After consideration, this Court concluded that the household vehicle exclusion could not be enforced as to Mr. Gallagher because it was "inconsistent with the unambiguous requirements" for waiving stacking set forth in Section 1738. *Id.* at 137. We observed that the Section 1738(d) waiver form "has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage." *Id.* The Court recounted that Mr. Gallagher had not signed the statutorily-mandated form and instead had paid increased premiums to obtain stacked UM/UIM coverage. We concluded that the household vehicle exclusion, "buried in an amendment," could not operate as a "*de facto* waiver of stacked UIM coverage." *Id.* at 138. In deeming the

---

[17] The household vehicle exclusion in *Gallagher* provided as follows: "This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy." *Id.* at 133.

household vehicle exclusion unenforceable as applied to the facts of *Gallagher*, we opined that the exclusion impermissibly "strips an insured of default UM/UIM coverage without requiring an insurer to demonstrate, at a bare minimum, that the insured was even aware that the exclusion was part of the insurance policy." *Id.*

State Farm contends that the facts of *Gallagher* are distinguishable from the facts in the case at bar. It highlights that the insured in *Gallagher* elected stacked coverage, did not sign a waiver of stacked coverage, and, instead, paid higher premiums for stacked coverage. In contrast, State Farm and its *amici* emphasize that Linda Donovan declined stacked coverage and received reduced premiums as a result of her executing the statutory waiver of stacked coverage, even if it is deemed applicable only to intra-policy stacking. Thus, they argue that *Gallagher* should not apply to the household vehicle exclusion in the case at bar. State Farm's *Amicus* CURE explains that *Gallagher* should instead be limited to cases "where the insured: (a) requested and elected stacking; (b) paid an additional premium for stacking; and (c) refused to execute a Stacking Waiver."[18] CURE's Brief at 8.

State Farm, therefore, contends that the household vehicle exclusion should be enforced in this case. It maintains that Corey should not obtain the benefit of coverage for which Linda did not pay and, instead, should be bound by the plain language of the policy Linda signed. It asserts that "the household exclusion simply operates to preclude Corey from stacking UIM benefits under the non-stacking Personal Auto Policy, just as Linda had elected." State Farm's Brief at 17. It argues that the household vehicle

---

[18] *Amici* Insurance Associations would limit *Gallagher* even further by arguing that it should apply only "when the insurer unilaterally place[s] vehicles on separate stacked policies." Insurance Associations' Brief at 3-4. They assert that to extend *Gallagher* to apply in cases with multiple insurers "would require all insurers to assume that it is possible that unknown, often high risk, household vehicles may exist or might be acquired and in effect make all insurance consumers pay for it." *Id.* at 27.

exclusion "protects State Farm from the measurably higher risk associated with Corey's use of his own vehicle which is not insured for UIM coverage under his mother's Personal Auto Policy." *Id.* at 24.

The Donovans respond that *Gallagher* controls this case and, therefore, prohibits the enforcement of the household vehicle exclusion as a disguised waiver of inter-policy stacking. They read *Gallagher* to apply to situations where: "(1) the policy under which [the] claim has been made provides inter-policy stacking; and (2) the claim has been denied on the basis of the household exclusion." Donovans' Brief at 42. They assert that these criteria are met in the case at bar. First, they contend, in line with the discussion above, that Linda's Section 1738(d) waiver of stacking applies only to intra-policy and not inter-policy stacking on her multi-vehicle policy. Thus, they maintain that, like Mr. Gallagher, Linda should be deemed not to have waived inter-policy stacking. Next, they observe that State Farm denied Corey's claim based upon the household vehicle exclusion. Thus, they argue that *Gallagher* controls.

Additionally, the Donovans emphasize that the household vehicle exclusion is included only in the W3 Coverage, which applies to unstacked coverage, and is not included in the W Coverage, which applies to stacked coverage. Thus, they contend that absent a knowing waiver of stacked coverage for inter-policy stacking, the W Coverage, rather than the W3 Coverage, applies to Linda's Auto Policy, at least for purposes of inter-policy stacking. Accordingly, under *Gallagher*, they claim that the household vehicle exclusion in Linda's Auto Policy is invalid as it cannot operate as a *de facto* waiver of inter-policy stacked UIM coverage.[19]

---

[19] The Donovans argue not only for the applicability of *Gallagher* but also for reevaluation of this Court's prior precedent including *Prudential Property & Casualty Insurance Co. v. Colbert*, 813 A.2d 747 (Pa. 2002) and *Eichelman v. Nationwide Insurance Co.*, 711 A.2d 1006 (Pa. 1998), which upheld the validity of the household vehicle exclusion.

The Donovans counter the implication that Linda is attempting to claim coverage for which she did not pay premiums. They reject the suggestion that Linda would have been subject to higher UIM premiums if the motorcycle had been covered under the Auto Policy. Instead, they assert that insurers set UIM premiums based only upon the coverage limits and the geographic region, without consideration of the number or types of vehicles being insured. Donovans' Brief at 17. They allege that the UM/UIM premium would not have increased if the motorcycle had been added to Linda's policy, unlike liability coverage premiums which vary based upon vehicle covered.[20] *Id.*

After review, we find the logic of the case at bar indistinguishable from that in *Gallagher*. In both cases, the insured did not validly waive inter-policy stacking. Whether the insured did not sign a waiver, as in *Gallagher*, or signed a deficient waiver as to inter-policy stacking, as in the case at bar, the result is the same: the policy defaults to inter-policy stacking of UM/UIM coverage. In either case, the household vehicle exclusion cannot operate as a *de facto* waiver of inter-policy stacking because it fails to provide the insured with a knowing waiver of that coverage. Accordingly, as in *Gallagher*, the

---

In contrast, State Farm asserts that the Court in *Gallagher* limited its decision to "the facts of this case" and did not abrogate the prior decisions that had upheld other applications of the household vehicle exclusion including *Colbert* and *Eichelman.* State Farm's Brief at 19.

We observe that this Court in *Colbert and Eichelman* did not address the interplay between the absence of a valid waiver of stacked coverage and the household vehicle exclusion as was central to the holding in *Gallagher*. Accordingly, we find those cases distinguishable as the relevant challenge was not before this Court.

[20] As this case presents to this Court certified questions of law raised in cross-motions for summary judgment based upon stipulated facts, we can offer no opinion on the validity of the Donovans' factual assertions regarding the calculation of UIM premiums. We leave consideration of arguments of this genre for another day based upon a developed record.

household vehicle exclusion cannot be enforced to waive inter-policy stacking in regard to Linda's Auto Policy as it does not comply with the requirements for waiver of stacking under Section 1738(d).[21]

**Issue III - Coordination of Benefits**

After concluding that the Section 1738(d) waiver provided in Linda's Auto Policy is unenforceable in regard to inter-policy stacking and, as a result, that the household vehicle exclusion contained in Coverage W3 also is unenforceable as a *de facto* waiver of inter-policy stacked coverage, we finally consider the coverage available to Corey under the policy's coordination of benefits provisions. As set forth *supra*, the coordination of benefits provision under Coverage W3 provides, in relevant part, that "the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies." Stipulation of Facts, Ex. 2, State Farm Car Policy Booklet at 27. If applicable to Corey's coverage, the "single highest applicable limit" would be the $100,000 provided by Linda's Auto Policy.[22] Given that Corey already received $50,000 from his Motorcycle Policy, he would receive only an additional $50,000 from Linda's Auto Policy, if the coordination of benefits provision of Coverage W3 applied. In effect, this implements the waiver of inter-policy stacked coverage as it eliminates the addition of the coverage provided by Linda's Auto Policy to the coverage provided by Corey's Motorcycle Policy.

---

[21] We observe that the household vehicle exclusion would not have an effect on intra-policy stacking as by definition intra-policy stacking applies to stacking between vehicles on the same policy, whereas the household vehicle exclusion (at least in this case) attempts to prevent coverage for a vehicle that is not included on the policy.

[22] As set forth above, Linda's policy provided unstacked intra-policy coverage such that the upper limit of her coverage was $100,000, rather than $300,000, which would have been applicable if she had stacking of the $100,000 coverage for each of her three automobiles on her policy.

Conversely, the coordination of benefits provision set forth in Coverage W, applicable to stacked UIM coverage, does not limit recovery to the "single highest applicable limit" and instead provides as follows: "If underinsured motorist vehicle coverage for bodily injury is available to an insured from more than one policy provided by us or any other insurer, any coverage applicable . . . under this policy shall apply on an excess basis if the insured sustains bodily injury while occupying a vehicle other than your car." *Id.* at 26. Thus, if applicable, this provision would provide up to an additional $100,000 of UIM coverage for Corey's injuries suffered while operating his motorcycle, which all agree was not encompassed by the term "your car."

State Farm seeks application of the plain language of the Coverage W3 coordination of benefits provision. It asserts that Linda's Auto Policy clearly designated Coverage W3 to be applicable on the declaration page and her premiums were calculated based upon that coverage choice. Regardless of whether the statutory waiver form is valid as to inter-policy stacking, State Farm argues that Linda's Policy unambiguously provided Coverage W3 and not Coverage W.

The Donovans respond that the provisions of Coverage W3, including the coordination of benefits provision, apply to unstacked UIM coverage. They claim, however, that because Linda's waiver of stacked coverage is invalid as to inter-policy stacking, then the Coverage W3 coordination of benefits provision, which addresses the interaction between policies, is inapplicable. Accordingly, they aver that Coverage W's coordination of benefits provision applies, which allows Corey to receive up to $100,000 of additional coverage on top of the $50,000 he received under his Motorcycle Policy.[23]

---

[23] The Donovans alternatively argue that the coordination of benefits provision of Coverage W3 additionally violates the MVFRL's provision for excess rather than gap coverage pursuant to this Court's decision in *Generette v. Donegal*, 957 A.2d 1180 (Pa. 2008). We do not address this issue which was not encompassed in the issues granted review.

In reviewing this claim, we recognize that the declaration page of Linda's Auto Policy indisputably states that Coverage W3 applies. Moreover, we recognize that Coverage W3 applies to unstacked coverage, and Linda signed the Section 1738(d) UIM stacking waiver. However, as set forth above, while her waiver is valid as to intra-policy stacking, it is not valid as a waiver of inter-policy stacking.

Importantly, the Coverage W3 coordination of benefits provision relates to inter-policy stacking as it governs the interaction of coverages on separate policies. Indeed, the Coverage W3 coordination of benefits provision implements the waiver of inter-policy UIM stacking as it dictates that the combined coverage is limited by the highest limit of any single policy rather than providing for the addition of coverages. Based upon the same reasoning as in *Gallagher*, we conclude that the coordination of benefits provision cannot operate as a *de facto* waiver of inter-policy stacking. While other aspects of Coverage W3 may apply to Linda's Auto Policy, we simply cannot apply the coordination of benefits provision to implement a stacking waiver, when Linda did not validly waive inter-policy stacking.

**Conclusion**

For the reasons set forth above, we answer the following two questions as certified by the Court of Appeals for the Third Circuit in the negative:

> 1. Is a named insured's signing of the waiver form set out at 75 Pa.C.S. § 1738(d) sufficient to waive inter-policy stacking of underinsured motorist benefits under Pennsylvania's Motor Vehicle Financial Responsibility Law, where the policy insures more than one vehicle at the time the form is signed?
>
> 2. If the answer to Question 1 is no, is a household vehicle exclusion contained in a policy in which the named insured did not validly waive inter-policy stacking enforceable to bar a claim made by a resident relative who is injured while

> occupying a vehicle owned by him and not insured under the policy under which the claim is made?

*Donovan*, 237 A.3d 395.  In regard to the third certified question, we conclude that "the lack of a valid waiver of inter-policy stacking render[s]" the Coverage W3 coordination of benefits provision inapplicable in the case at bar.  *Id.*  Having answered these questions of law, we return the matter to the United States Court of Appeals for the Third Circuit.

Justices Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice Wecht files a concurring opinion.

Justice Saylor files a dissenting opinion.